UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHANE KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01565-MPB-MKK |
| | ) |
| SMURFIT WESTROCK PLC, | ) |
| PHILLIP GIDDENS, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Shane King filed a lawsuit against his former employer, Smurfit Westrock PLC, and Phillip Giddens (collectively, "Defendants"), alleging violations of the Family and Medical Leave Act ("FMLA") as well as state law arising from his termination. (Docket No. 1). Now before the Court are Plaintiff's Motion for Partial Summary Judgment, (Docket No. 53), and Defendants' Cross Motion for Summary Judgment, (Docket No. 60). For the reasons that follow, Plaintiff's Motion, (Docket No. 53), is **DENIED**, and Defendants' Motion, (Docket No. 60), is **GRANTED in part and DENIED in part**.

**I.     Background**

Plaintiff Shane King began working for Defendant Smurfit Westrock PLC ("Westrock") as a temporary forklift operator before becoming a full-time forklift operator at Westrock's Indianapolis recycling plant in May 2018. (Docket Nos. 53-3 at ECF p. 1; 53-4 at ECF pp. 8, 12; 53-5 at ECF p. 6). Defendant Phillip Giddens is the general manager of the Indianapolis plant. (Docket No. 53-5 at ECF p. 7).

Westrock provides its employees, including King, with an attendance policy. (Docket No. 53-4 at ECF p. 29). The attendance policy states that "[c]onsistent and reliable attendance is an

important part of each team member's job, and the expectations are that every team member will report to work every scheduled day, on time, and for their full shift." (Docket No. 61-2 at ECF p. 3). Westrock's policy uses a points-based system to track attendance violations. (*Id.* at ECF pp. 3–5). Employees who violate the attendance policy accumulate points that are allocated depending on the type of violation. (*Id.*). For instance, if an employee "arrives late to their scheduled shift but has notified [Westrock of their late arrival sixty] minutes or more prior to the scheduled start time of the shift," then the employee will accrue 0.5 points. (*Id.* at ECF p. 3).

Westrock's attendance policy details the disciplinary consequences for accumulating attendance violation points. (*Id.* at ECF p. 6). For employees who work eight or ten hour shifts regularly, accruing four points warrants a verbal warning, six points warrants a written warning, eight points warrants a final warning with three-day suspension, and ten points warrants termination. (*Id.*).

King began violating the attendance policy as early as January 2019. (Docket No. 53-4 at ECF pp. 17–18). As of November 2023, King had accumulated 6.5 points for violating the attendance policy on various occasions. (*Id.* at ECF pp. 19–20; Docket No. 53-6 at ECF p. 6). The following month, King accumulated a total of 8.5 points. (Docket Nos. 53-4 at ECF p. 31; 53-6 at ECF p. 3). Consequently, King was "suspended, without pay, for a period of [three] working days." (Docket No. 53-6 at ECF p. 3). By March 2024, King accumulated thirteen points. (*Id.* at ECF pp. 1–2). King was not terminated despite being over the ten-point threshold for termination. (*Id.*). Instead, he was provided a "final warning . . . due to a delay in delivering the [f]inal [w]arning prior to the [tenth] accrued point." (*Id.* at ECF p. 2).

In July 2024, King was diagnosed with a hernia and surgery was scheduled. (Docket No. 53-4 at ECF p. 49). King notified Giddens and an office manager about the upcoming surgery

2

and initiated the short-term disability claims process with Sedgwick, Westrock's third-party benefits administrator. (*Id.* at ECF pp. 49–51). King's surgery was initially scheduled for July 25 but was rescheduled to August 21 the day before the initial surgery date. (*Id.* at ECF pp. 54–55). King notified Westrock of the rescheduled surgery date and requested leave by August 5. (Docket Nos. 53-1; 53-5 at ECF pp. 19–20).

On August 8 and 9, King was late to work. (Docket Nos. 53-4 at ECF p. 48; 61-7 at ECF pp. 1–2). On August 8, Giddens spoke with King about the importance of adhering to the attendance policy. (Docket No. 53-5 at ECF p. 110). On August 9, Giddens messaged Mark Kennedy, a human resources manager, about firing King for his violations of the attendance policy. (Docket No. 53-2 at ECF pp. 1–3). Giddens was concerned that King "believe[d] that he's now immune from any action having filed to [short-term disability] and . . . that this will continue up to the date of his surgery while the remainder of the team . . . perceives that there are no consequences for him." (*Id.* at ECF p. 1). In response to Giddens's messages, Kennedy wrote King's leave was not "scheduled to begin until 8/21," and noted that King had not "supplied documentation for his leave per Sedgwick." (*Id.* at ECF p. 3). Kennedy relayed that "[a]ny absences he has now are not excused" and that if King "is at [ten] or more points . . . [he would] check into termination." (*Id.*). Kennedy thought that King's "pending FMLA claim could complicate" termination but that he would "check into it." (*Id.*). Giddens responded confirming that King was over the ten-point limit. (*Id.*).

On August 20, Giddens asked King about the status of his leave request, prompting King to send his Sedgwick claim documents to Giddens. (Docket No. 53-4 at ECF pp. 59–61). The same day, Kennedy notified Giddens that King's firing was supported by human resources. (Docket No. 61-1 at ECF p. 4). On August 21, King was absent for his surgery. (Docket No. 53-

3

10). The day of King's surgery, Giddens attempted to call King. (Docket No. 53-9). The next day, August 22, Giddens called King again, King returned his call, and Giddens told him he was fired. (Docket No. 53-4 at ECF pp. 57–58). During the call, Giddens informed King that his leave was not approved, and his termination was based on attendance. (*Id.* at ECF pp. 58, 61).

After King was fired, human resources personnel at Westrock and Sedgwick discussed King's termination and leave status. (Docket No. 53-11 at ECF pp. 3–8). On August 26, an office manager asked Kennedy what payroll code should be used for King's "last [three] days," from August 21 to August 23, and Kennedy suggested an FMLA code if it existed or to code the days as absences. (*Id.* at ECF p. 3). And on August 27, a senior human resource specialist reached out to Kennedy to ask what termination code to use for King as he is "still on a Leave of Absence status." (*Id.* at ECF p. 8). The next day, Kennedy requested help from a human resources operations manager because the available termination codes did "not accurately reflect the reason for termination." (*Id.* at ECF pp. 7–8). The operations manager then clarified that "we cannot terminate an employee [who] is currently on leave of absence" and "benefits [would need to] enter a row stating he either returned or was denied [short-term disability]." (*Id.* at ECF pp. 6–7). That same day, a benefits specialist emailed Westrock personnel, asking for them to "[p]lease let me know if you decide to proceed with the termination" to ensure King's claims with Sedgwick were updated appropriately. (*Id.* at ECF p. 5). The benefits specialist was then told King would be terminated effective August 20. (Docket No. 53-7 at ECF p. 2).

King filed this lawsuit in September 2024. (Docket No. 1). King alleges that Defendants Westrock and Giddens violated the FMLA as well as state law when they fired King during his leave. King filed a Motion for Summary Judgment as to the FMLA interference and retaliation claims, (Docket No. 53), and Defendants filed a Cross Motion for Summary Judgment as to all

4

claims, (Docket No. 60). The arguments made in these Motions are consolidated and resolved in this Order.

## II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jaranowski v. Ind. Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing summary judgment motions, this Court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). Yet inferences supported "by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). Because courts must not "scour the record in search of evidence to defeat a motion for summary judgment," the nonmoving party has the duty and "responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## III. Discussion

### A. FMLA Claims

King brings both an FMLA interference and FMLA retaliation claim, and both parties moved for summary judgment on these claims. The cross-motions raise a central question: Was King fired from Westrock due to his long history of attendance violations, or was he fired in part due to his taking FMLA leave? Because a genuine dispute as to a material fact remains, neither party is entitled to summary judgment on the FMLA claims.

5

The FMLA guarantees eligible employees up to twelve workweeks of leave due to a serious health condition. 29 U.S.C. § 2612(a)(1)(D). Eligible employees who take leave are entitled upon their return to the same position or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1)(B). To establish an FMLA interference claim, a plaintiff must show (1) his eligibility for FMLA protections; (2) his employer's coverage by the FMLA; (3) his entitlement to take leave under the FMLA; (4) sufficient notice of his intent to take leave was provided; and (5) his employer interfered with, restrained, or denied him FMLA benefits to which he was entitled. *Juday v. FCA US LLC*, 57 F.4th 591, 595 (7th Cir. 2023). The first four elements of the interference claim are uncontested, leaving only the fifth element—whether Defendants denied King a FMLA benefit to which he was entitled—at issue.

An employee's entitlement to be restored to their position is not absolute. Under the FMLA, "an employer can refuse to restore an employee to their former position when restoration would confer a 'right, benefit, or position of employment' that the employee would not have been entitled to if the employee had never left the workplace." *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805–07 (7th Cir. 2001) (quoting 29 U.S.C. § 2614(a)(3)(B)) (upholding grant of summary judgment for employer because plaintiff's work "deficiencies were the reason for her termination . . . regardless of her leave" and plaintiff did not provide sufficient contrary evidence); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) (same); *McBeath v. City of Indianapolis*, No. 1:22-cv-1216, 2024 WL 1885849, at *6 (S.D. Ind. Apr. 29, 2024) (granting summary judgment for an employer because plaintiff was not entitled to restoration). When an employer presents evidence that the employee would not be entitled to restoration, the employee must present evidence overcoming the employer's assertion, "as she carries the burden

6

of demonstrating her right to the entitlement." *Kohls*, 259 F.3d at 804. Given that the right to restoration is not absolute, whether the employer violated the FMLA "turns on why the employee was not reinstated." *Id.* at 805. At this stage of litigation, the question is "whether a jury could find that the defendants did not reinstate [the employee] because [he] exercised [his] right to take FMLA leave." *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).

The parties dispute whether King was entitled to restoration. Defendants argue that King's "termination was based on [King's] continued blatant violations of the Attendance Policy," which meant King "was no longer entitled to his position." (Docket No. 61 at ECF p. 17). Anticipating this argument, King argues that Defendants cannot make this showing as "[i]t was only when [King] took 'unapproved' FMLA time off that Westrock fired him." (Docket No. 54 at ECF p. 6).

Defendants' reliance on *Cracco* and *McBeath* in support of their argument is unavailing. In *Cracco*, summary judgment in the employer's favor was appropriate because "substantial evidence" showed the plaintiff was not entitled to resume employment after taking leave, and the plaintiff "offered no evidence to dispute that the investigation began, and his shortcomings were discovered, *after* his leave period commenced." 559 F.3d at 636 (emphasis added). And in *McBeath*, this Court granted summary judgment for the employer where the plaintiff's misconduct was discovered in the months prior to her leave and she "presented no evidence that would lead a reasonable trier of fact to conclude that . . . she would have retained her job had she not taken FMLA leave." 2024 WL 1885849, at *6. Here, by contrast, King's violations of the attendance policy were not discovered right before or after his leave commenced. (*See* Docket No. 53-5 at ECF p. 14). Moreover, evidence of Defendants' prior knowledge of King's attendance violations undermines their position that King was not entitled to reinstatement. King retained

7

his employment with Westrock for months despite a history of attendance violations before Defendants chose to terminate his employment.

The timing of King's firing raises an inference of employer impropriety. *See Simpson v. Off. of Chief Judge of Cir. Ct. of Will Cnty.*, 559 F.3d 706, 713 (7th Cir. 2009). Defendants are correct that temporal proximity alone may not ordinarily save an FMLA claim. But this case presents the exact kind of situation contemplated by the Seventh Circuit in which the timing of the adverse action matters. *See Kohls*, 259 F.3d at 806. In *Kohls*, the Court acknowledged that the timing of a firing decision could create an inference of employer impropriety "if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware[.]" *Id.* Here, a supervisor, Giddens, who had been aware of King's attendance problems, did not fire King until he was provided notice that King was taking leave, and Giddens based King's firing, at least in part, on attendance incidents he had already been aware of. (*See* Docket Nos. 53-1; 53-4 at ECF p. 61; 53-5 at ECF pp. 14, 19–20).

Both sides have put forth evidence creating a genuine dispute as to whether Defendants did not reinstate King because he exercised his right to take leave. King's evidence shows that despite years of violating the attendance policy and accumulating enough points to be fired without actually being fired, King was terminated by Defendants during the first few days of his surgery leave. (*See* Docket Nos. 53-6 at ECF pp. 1–2; 53-4 at ECF pp. 57–58). Additionally, King's evidence shows that Defendants Westrock and Giddens were still tracking and discussing King's leave approval status after August 9, when Defendants claim they decided to fire King, and during King's firing when Giddens mentioned King's leave was not approved. (*See* Docket Nos. 53-4 at ECF pp. 58–61; 53-11 at ECF pp. 1–8). In contrast, Defendant's evidence shows that

8

King's history of attendance violations garnered him enough points to justify termination according to the attendance policy at the time he was fired. (Docket Nos. 53-2 at ECF p. 3; 53-6 at ECF pp. 1–2).

The parties have each provided a possible explanation for King's firing. A jury might choose to believe King's explanation—that his taking FMLA leave and absences during leave were the last straw for Defendants—or they might believe Defendants' explanation—that the timing of King's firing was a coincidence and King's attendance violations were the reason for his firing. But because reasonable triers of fact could choose to believe either explanation, summary judgment in either party's favor is inappropriate. Thus, Plaintiff's and Defendants' Motions for Summary Judgment, (Docket Nos. 53; 60), as to Plaintiff's FMLA interference claim are **DENIED**.

The Court turns to Plaintiff's retaliation claim. "The difference between a retaliation and interference theory is that the first 'requires proof of discriminatory or retaliatory intent while [an interference theory] requires only proof that the employer denied the employee his or her entitlements under the Act.'" *Goelzer*, 604 F.3d at 995 (citation omitted). Plaintiffs need not "prove that 'retaliation was the *only* reason for [their] termination; [they] may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'" *Id.* (citation omitted) (emphasis in original).[1] King will survive summary judgment so long as he has created a triable issue of whether his firing had a

---

[1] The Seventh Circuit has used both a motivating factor standard and but-for standard in analyzing causation for FMLA retaliation claims. *Compare Lohmeier v. Gottlieb Mem'l Hosp.*, 147 F.4th 817, 830 (7th Cir. 2025) (using the "but-for" causation standard), *with Trahanas v. Nw. Univ.*, 64 F.4th 842, 856 (7th Cir. 2023) (using the "motivating factor" causation standard); *see also Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014) (explaining that the Circuit has not addressed "whether but-for causation should apply to FMLA retaliation claims"). Both parties apply the motivating factor standard in their briefs in support of their motions for summary judgment. (*See* Docket Nos. 54 at ECF p. 5; 61 at ECF p. 17). The Court need not resolve the question here because King and Defendants avoid summary judgment even if but-for causation applies. *See Malin*, 762 F.3d at 562 n.3 ("A single event can have multiple but-for causes[.]").

discriminatory motivation. *See id.* To establish his FMLA retaliation claim, King must show: (1) he engaged in a statutorily protected activity; (2) Defendants took adverse action against King; and (3) the protected activity caused the adverse action. *See Freelain v. Vill. of Oak Park*, 888 F.3d 895, 900–01 (7th Cir. 2018). King has established the first two elements; he engaged in statutorily protected activity when he requested FMLA leave, and Defendants took an adverse action against him when King was fired. The parties dispute, however, whether King's FMLA use motivated Defendants' decision to fire King.

A genuine dispute remains as to whether King's FMLA request played a role in his firing. King maintains that his leave played a role in his firing while Defendants maintain that King was fired "due solely to [his] attendance violations on and before August 9, 2024." (Docket No. 61 at ECF p. 19). Defendants further argue that "Plaintiff has no evidence to support his contention besides his own assumptions." (*Id.*). The Court disagrees. As is the case for King's interference claim, King has provided sufficient evidence to at least call into question whether his taking leave played a role in his firing. In addition to the suspicious timing of his termination notification the day after he began leave, King points to evidence that Defendants were still concerned about King's leave approval status before, during, and after his firing was effectuated. (Docket Nos. 53-4 at ECF pp. 58–61; 53-11 at ECF pp. 1–8). If Defendants fired King solely because of his attendance violations on or before August 9, then it is not clear why King was alerted of his firing during his leave and why his leave approval status was still relevant enough to be discussed. Defendants contend they have good reason for the way King's firing was handled and perhaps they do. But, as King concedes, whether King was fired because of attendance or in part because of his taking leave is a credibility question not up for the Court to answer. (*See* Docket No. 66 at ECF p. 1).

There is a genuine dispute as to whether King was fired for taking FMLA leave. Therefore, summary judgment is inappropriate on his FMLA retaliation claim. Plaintiff's and Defendants' Motions for Summary Judgment, (Docket Nos. 53; 60), as to the FMLA retaliation claim are **DENIED**.

### B.  State Law Claims

King also brings two state law claims, breach of contract and tortious interference, on which Defendants seek summary judgment. As an initial matter, King did not respond to Defendants' summary-judgment arguments as to these claims or raise them in his response, so he has "abandon[ed]" those claims. *Fultz v. Taylor*, No. 3:19-CV-557, 2023 WL 2328212, at *5 (N.D. Ind. Mar. 1, 2023) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)).

Abandonment aside, Defendant is entitled to judgment as a matter of law on Plaintiff's state law claims. To prevail on a breach of contract claim under Indiana law, "the plaintiff must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville,* 977 N.E.2d 924, 937 (Ind. 2012). King alleges Defendants "breached an implied contract with [King] (to maintain his employment and to allow him the short-term disability leave to which he was entitled) when they fired him on the first day of his disability leave." (Docket No. 37 at ECF pp. 1–2). Defendants argue that they are entitled to summary judgment because King fails to provide evidence that his employment is "anything other than 'at-will,'" and accordingly, Defendants could not have breached his employment contract because they were able to "terminate his employment at any time, with or without cause." (Docket No. 61 at ECF pp. 20–21). Indeed, "the presumption of at-will employment is strong" in Indiana, and when "the employment is at-will," it "is presumptively terminable at any time, with or without cause." *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)

(reinstating grant of summary judgment on a breach of employment contract claim where the presumption of an at-will employment relationship was not rebutted). Because King has not rebutted the presumed employment at-will relationship and therefore Defendants were able to terminate his employment with or without cause, no genuine issue as to whether Defendants breached an implied employment contract exists.

Summary judgment is also proper on King's tortious interference claim against Westrock. To succeed on a tortious interference with contract claim under Indiana law, "a plaintiff must show: 1) existence of a valid and enforceable contract; 2) defendant's knowledge of the existence of the contract; 3) defendant's intentional inducement of breach of the contract; 4) the absence of justification; and 5) damages resulting from defendant's wrongful inducement of the breach." *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 214 (Ind. 2019). King alleges Defendants "tortiously interfered with [King's] right to receive short-disability benefits from a third-party provider when they fired him on the first day of his disability leave." (Docket No. 37 at ECF p. 2). Defendants argue that summary judgment should be granted on this claim because the short-term disability contract in question is between the parties, King and Westrock, and such a claim is only cognizable where a third party interferes with the contract. Defendants' argument is consistent with Indiana law: "A party cannot 'interfere' with its own contracts, so the tort itself can be committed only by a third party." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 138 (Ind. 2006). Westrock cannot interfere with its own contract with King, and thus summary judgment on this claim as it applies to Westrock is appropriate.

As applied to Defendant Giddens, the tortious interference claim fails as well. Giddens is an agent of Westrock's, so King must show "some interfering act by [Giddens] that rests outside [his] authority as [an] agent[] of the corporation." *Id.* at 139. Because King failed to designate

12

evidence showing that Giddens acted outside the scope of his official capacity in terminating him, summary judgment in favor of Giddens is also warranted.

Therefore, summary judgment in favor of Defendants as to King's breach of contract and tortious interference claims is **GRANTED**.

### IV. Conclusion

Plaintiff's Motion for Partial Summary Judgment, (Docket No. 53), is hereby **DENIED.** Defendants' Cross-Motion for Summary Judgment, (Docket No. 60), is **GRANTED in part and DENIED in part**. King's FMLA interference and retaliation claims may proceed.

**IT IS SO ORDERED.**

Dated: October 31, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.